UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NORTHERN CABLE AND AUTOMATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br><br>GENERAL MOTORS, LLC,<br><br>Defendant. | Case No. 2:13-cv-12988<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR ENTRY OF ORDER INCORPORATING SETTLEMENT AGREEMENT [72]**

The parties put the terms of their settlement agreement on the record. They had their client representatives acknowledge the terms. Then, in reducing these terms to a written agreement, a dispute arose. Now before the Court is Defendant General Motors, LLC's motion asserting that the parties settled this case and that, under the parties' agreement, Plaintiff Northern Cable & Automation, LLC d/b/a Flex Cable cannot sue GM for infringement of United States Patent No. 7,976,333. GM alternatively argues that if this non-suit covenant is not part of the parties' settlement, then there was no settlement. Flex Cable maintains that a settlement was reached—but without any promise not to sue GM for infringement of the '333 Patent. As this Court suggested at the November 17, 2015 hearing on GM's motion, and for the reasons set forth below, Flex Cable's position is better supported by the record.

**I.**

Although this case started as a limited dispute over the ownership and inventorship of the '333 Patent, GM expanded the case by asserting that the '333 Patent is invalid and unenforceable. To better address these claims, the Court scheduled a technology tutorial.

At the July 27, 2015 tutorial, the Court raised the issue of whether there was an Article III case or controversy over GM's counterclaims of invalidity and unenforceability given that Flex Cable had not sued GM for patent infringement and that the letter that caused Flex Cable to initiate this case did not threaten infringement litigation. This triggered the parties to engage in settlement discussions that same day. Following those discussions, the parties informed the Court that they had reached a settlement.

Counsel then placed the material terms of the settlement on the record. In particular, GM's counsel volunteered to place the terms on the record and stated in relevant part:

> The basic outline of the settlement will be reduced to a settlement agreement and then, of course, an order of the Court dismissing the case.
>
> The claim that Chawa was an inventor will be dismissed with prejudice. The claims regarding ownership and invalidity unenforceability of the patent will be dismissed without prejudice.
>
> The plaintiff has agreed that should it enforce this patent in the future, it will not seek any injunction that disrupts GM's production, warranty, or service obligations. In other words, GM will be able to get the parts to manufacture cars and they'll be able to provide after-market service with respect to those cars. That being said, they [Flex Cable] will be allowed to sue someone for damages, if they want, just not seek an injunction against the GM supply.
>
> The other[s] are the fairly standard provisions. These restrictions will, of course, follow the patent should it be assigned or transferred.

(Dkt. 71, Settlement Hr'g Tr. at 4.)

Further discussion then ensued about how the inventorship dispute would be resolved. Eventually, counsel agreed that the Court's order dismissing this case would state that "Chawa is not an inventor on the patent." (Settlement Hr'g Tr. at 6.)

The Court then asked Flex Cable's counsel if there was anything that he wanted to add to the record. Counsel for Flex Cable replied, "No. Nothing." (*Id.*)

Representatives of the parties were then queried. The president of Flex Cable, Stewart Borman, stated on the record that he had heard the terms of the settlement and approved of them. (Settlement Hr'g Tr. at 7.) A representative for GM, Mark Chuey, similarly stated that he had heard the terms of the settlement and approved of them. (*Id.* at 9.)

Despite the foregoing, the parties now dispute whether there was a settlement, and, if there was, whether Flex Cable agreed that it would not sue GM for infringement of the '333 Patent in the future. (*See* Dkt. 72, GM's Mot. for Order Incorporating Settlement Agreement; Dkt. 73, Flex Cable's Resp.; Dkt. 75, GM's Reply.)

## II.

The Sixth Circuit has "long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it, even where that agreement has not been reduced to writing." *Bostick Foundry Co. v. Lindberg, a Div. of Sola Basic Indus., Inc.*, 797 F.2d 280, 282–83 (6th Cir. 1986). "When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).

3

### III.

The record unambiguously reflects that the parties had a meeting of the minds on all material terms of the settlement agreement and that those terms did not include a covenant that Flex Cable would not sue GM for infringement of the '333 Patent. The transcript reflects that counsel for both GM and Flex Cable were given full opportunity to place any material terms of the settlement on the record. The record further reflects that representatives for both parties listened to what counsel put on the record, and agreed that what was stated captured the parties' agreement. And what was stated was that Flex Cable, "should it enforce this patent in the future," would not "seek any injunction that disrupts GM's production, warranty, or service obligations." At no point does the record indicate that Flex Cable was barred from suing GM for monetary relief for infringement of the '333 Patent. Flex Cable promised not to sue any party for an injunction that would disrupt GM's production, warranty, or service obligations—nothing more.

GM stresses that it would not have agreed to settle this case absent a promise from Flex Cable that it would not sue GM for infringement. But GM offers no evidence of its thoughts at the time of settlement. GM's motion includes no affidavit from Chuey stating that, following the parties' settlement discussions and prior to placing the material terms on the record, he thought that Flex Cable had agreed not to sue GM for infringement. Moreover, mere statements of counsel are insufficient in this case given the unambiguous transcript. Indeed, it was GM's counsel who placed the terms of the settlement on the record, and if Flex Cable's agreement not to sue GM was in fact necessary for GM to settle this case, the Court would have expected GM's counsel to have included that critical term in his recital. Yet the transcript reflects otherwise.

GM also argues that the this case is just like *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414 (6th Cir. 2000), a case where the Sixth Circuit reversed a district court's decision to enforce a settlement articulated on the record. *Therma-Scan* involved a claim of trademark infringement and, during oral argument, discussions took place regarding whether confusion over the defendant's use of the mark THERMOSCAN could be reduced by the inclusion of a secondary BRAUN identifier. *See id.* at 416. The parties then engaged in off-the-record settlement discussions and informed the district judge that they had reached a settlement. *See id.* The district judge then attempted to articulate the material terms on the record. *Id.* In doing so, the district judge stated, "all marketing in the future of the Thermoscan thermometer shall include the name 'Braun' *prominently displayed* either in the advertising or on the package. And I'm not saying that it has to be equal size, bigger or smaller, but *just visible*[.]" *Id.* (emphasis altered). The parties later disagreed on the required prominence of the BRAUN identifier and thus could not reduce their settlement to writing. *See id.* at 417–18. The district court nonetheless ordered the plaintiff to sign a settlement agreement that stated in part, "There are no requirements as to the size of the BRAUN mark or different comparable mark, as long as it is visible." *Id.* at 418.

In concluding that the district court clearly erred in finding that the parties had reached an agreement, the Sixth Circuit stressed that the district court's own language was inconsistent: "The basic problem is that, at least as it relates to size, the terms 'prominently displayed' and 'just visible' are inherently incompatible. Yet the district court used both terms in successive sentences." *Therma-Scan*, 217 F.3d at 419–20. The Sixth Circuit thus concluded, "Because the root source of the ambiguity was the district court's own inconsistent language, we believe that it

was an abuse of discretion for the court to impose [the defendant's] version of the settlement upon [the plaintiff]." *Id.* at 420.

There is no comparable inconsistency here. The issue is silence: GM had the opportunity to put what it now says was a critical term on the record but did not do so. There is nothing inconsistent about what was said. Moreover, this Court did not attempt to place any gloss on the parties' agreed-upon terms. *Therma-Scan*, therefore, does not fit the facts of this case.

## IV.

In short, the record is plain: the parties settled this case with the understanding that Flex Cable could bring litigation to enforce the patent, but could not seek any injunctions that would disrupt GM's supply. There was no agreement that Flex Cable would not sue GM for infringement of the '333 Patent. The parties are hereby ORDERED to finalize a settlement consistent with the terms articulated on the record on July 27, 2015 (*see* Dkt. 71) and this opinion. A proposed order dismissing this case shall be submitted to the Court no later than December 18, 2015. Although Flex Cable has a plausible claim to fees and costs in defending GM's motion, the Court, in its discretion, declines to award them.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: December 1, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 1, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson